1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND PAUL NELSON,

11          Plaintiff,                    No. CIV S-06-1289 LKK DAD P

12        vs.

13   D.L. RUNNELS, et al.,

14          Defendants.                   ORDER

15   _____/

16          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  By order filed January 31, 2007, plaintiff's complaint was

18   dismissed with leave to file an amended complaint.  Plaintiff has filed an amended complaint.

19          The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

22   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

23   granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

24   U.S.C. § 1915A(b)(1) & (2).

25          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

26   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

1

1   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

2   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

3   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

4   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

5   Cir. 1989); Franklin, 745 F.2d at 1227.

6              A claim should be dismissed for failure to state a claim upon which relief may be

7   granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of the

8   claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing

9   Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651

10  F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must

11  accept as true the allegations of the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees,

12  425 U.S. 738, 740 (1976).  The court must also construe the pleading in the light most favorable

13  to the plaintiff and resolve all doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S.

14  411, 421 (1969).

15             The Civil Rights Act under which this action was filed provides as follows:

16         Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the
17         deprivation of any rights, privileges, or immunities secured by the
           Constitution . . . shall be liable to the party injured in an action at
18         law, suit in equity, or other proper proceeding for redress.

19  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

20  actions of each defendant and the deprivation alleged to have been suffered by the plaintiff.  See

21  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

22  (1976).

23             "A person 'subjects' another to the deprivation of a constitutional right, within the

24  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

25  omits to perform an act which he is legally required to do that causes the deprivation of which

26  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

1   personnel are generally not liable under § 1983 for the actions of their employees under a theory

2   of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the

3   causal link between him and the claimed constitutional violation must be specifically alleged.

4   See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

5   (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official

6   personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d

7   266, 268 (9th Cir. 1982).

8              In his original complaint, plaintiff listed as defendants D.L. Runnels, Warden of

9   High Desert State Prison ("HDSP"); M. McDonald, Acting Chief Deputy Warden of HDSP; M.

10  Wright, Acting Facility Captain at HDSP; and M. Dangier, Correctional Counselor I.  In

11  addition, plaintiff listed on a separate page Sergeant Amero, Sergeant A. Smith, Sergeant

12  Willcost, "the 3rd Watch acting participating lieutenant, all other correction officers named in

13  this case filed in letter and documents submitted."  The court advised plaintiff that he needed to

14  identify all of the defendants in the caption of his pleading and identify each defendant's position

15  and place of employment.  The court screened plaintiff's complaint solely with regard to claims

16  alleged against the four defendants listed in the caption of the complaint and the three additional

17  defendants named on the second page of the pleading.

18             Plaintiff asserted in his original complaint that staff punished him for failure to

19  comply with grooming standards despite the fact that he was exercising his rights to express and

20  practice his religion.  More specifically, plaintiff alleged that on June 25, 2003, he was

21  transferred from CSP-Solano, a level 3 institution, to HDSP, a level 4 institution, for failing to

22  comply with grooming standards after CSP-Solano staff "stockpiled" disciplinary violations and

23  increased his points from 32 to 62.  Plaintiff alleged that at HDSP he has suffered unfavorable

24  decisions concerning his classification and housing, has received inconsistent access to yard,

25  showers, and religious services, and has been threatened repeatedly with retaliatory transfers to a

26  more dangerous yard at HDSP.  On July 19, 2005, he and his cellmate were transferred, despite

1   their protests concerning safety, from B yard to D yard.  Defendant Sergeant Smith refused to

2   listen to the inmates' assertions concerning their safety and forced them to go to D yard.  On D

3   yard, plaintiff and his cellmate were each assaulted on August 9, 2005, in separate incidents

4   about half an hour apart.  Plaintiff received a broken nose and injuries to his eye and head, with a

5   possible cracked right cheek bone.  He was rushed to the emergency care unit but did not receive

6   proper medical care.  He and his cellmate were transferred back to B yard for their safety.

7   Plaintiff's allegations concerning various interviews, classification committee hearings, and

8   inmate appeals did not indicate any contention that plaintiff suffered further harm.

9           The court found that plaintiff's original complaint appeared to state a cognizable

10  Eighth Amendment claim against defendant Sergeant A. Smith.  However, it was concluded that

11  plaintiff had not alleged any facts at all against defendant Runnels and had not alleged facts that

12  show any constitutional violation by defendants McDonald, Wright, Dangier, Amero, and

13  Willcost.  Although plaintiff had stated a cognizable claim against defendant A. Smith, plaintiff

14  had not requested relief that could be obtained from that defendant in this court.  Plaintiff's

15  characterization of his pleading as a "Complaint - V.C.G.C.B." and his request for compensation

16  from "California Victims Compensation" appeared to reflect plaintiff's erroneous belief that this

17  federal court is a forum in which he could obtain monetary compensation from a state

18  administrative agency.

19          The court found that all of plaintiff's claims had to be dismissed.  Plaintiff had not

20  properly identified all defendants, had not alleged specific facts showing that each defendant

21  violated one or more of plaintiff's federal rights, and had not requested relief that could be

22  granted in this court.  The allegations in plaintiff's original complaint were found to be so vague

23  and conclusory with regard to most of the claims that the court could not determine whether this

24  action was frivolous or failed to state a claim for relief.

25          In his amended complaint now before the court, plaintiff lists approximately forty

26  additional defendants, including Arnold Schwarzenegger, Governor of the State of California;

1  James Tilton, Secretary of the Department of Corrections; Jeanne Woodford, Director of the

2  Department of Corrections; N. Grannis, Chief of Inmate Appeals, Sacramento, CA; John Doe 1,

3  Warden of Solano State Prison, Vacaville, CA; D.L. Runnels, Warden, HDSP, Susanville, CA;

4  John Doe 2, Chief Deputy Administrator, Solano State Prison, Vacaville CA; John Doe 3, Chief

5  Deputy Administrator of HDSP, Susanville, CA; M. McDonald, Associate Warden, HDSP,

6  Susanville, CA; R.E. Barnes, Associate Warden, HDSP, Susanville, CA; T. Perez, Associate

7  Warden, HDSP, Susanville, CA; John Doe 4, Captain of Solano State Prison, Vacaville, CA; M.

8  Wright, Acting Facility Captain of HDSP, Susanville, CA; J. Briddle, Chairperson Classification

9  of HDSP, Susanville, CA; T. Frohrib, Classification Committee Member, HDSP, Susanville,

10  CA; M. Norguard, CCII Correction Counselor Committee Member, HDSP, Susanville, CA; R.

11  Riddle, Ph.D Classification Committee Recorder of HDSP, Susanville, CA; H. Hanlon,

12  Correction Counselor I of HDSP, Susanville, CA; M. Dangler, Correction Counselor I of HDSP,

13  Susanville, CA; L. Kirk, Correction Counselor II of HDSP, Susanville, CA; M.D. Nielson,

14  Lieutenant of Solano State Prison, Vacaville, CA; A. Smith, Correction Sergeant, HDSP,

15  Susanville, CA; Wolcot, Correction Sergeant, HDSP, Susanville, CA; T. Amero, Correction

16  Sergeant, HDSP, Susanville, CA; J. Kelly, Correction Sergeant, HDSP, Susanville, CA; W.

17  Walker, Correction Officer, HDSP, Susanville, CA; Lauder, Correction Officer, HDSP,

18  Susanville, CA; C. Dunham, Correction Officer, HDSP, Susanville, CA; Crane, Correction

19  Officer, HDSP, Susanville, CA; Miranda, Correction Officer, HDSP, Susanville, CA; Hathaway,

20  Correction Officer, HDSP, Susanville, CA; Johnson, Correction Officer, HDSP, Susanville, CA;

21  D. Kelly, Correction Officer, HDSP, Susanville, CA; Potter, Correction Officer, HDSP,

22  Susanville, CA; Summerhill, Correction Officer, HDSP, Susanville, CA; Calven, Correction

23  Officer, HDSP, Susanville, CA; Domowdon, Investigative Security Unity Officer, HDSP,

24  Susanville, CA; Dr. James, Physician, HDSP, Susanville, CA; D. Galbrath. Medical Technical

25  Assistant or Registered Nurse, HDSP, Susanville, CA; and Paris, Correction Officer of Solano

26  /////

5

1    State Prison, Vacaville, CA.  Plaintiff alleges that he is suing all of the defendants in their official

2    and individual capacities.

3              In a section titled "Personal Involvement," plaintiff includes a series of vague and

4    conclusory allegations concerning the involvement of the named defendants in civil rights

5    violations.  For example, he alleges that Governor Schwarzenegger is "ultimately responsible as

6    the governor of the state of California for the delegation of responsibility for the Department of

7    Corrections and Rehabilitation."  (Compl. at 10).  He also names twenty-six defendants and

8    claims that they "should have known or actively took part in constitutional violations taking

9    place at Solano State Prison and High Desert State Prison due to the grievance system in place

10   and utilized by plaintiff."  (Compl. at 10.).  Plaintiff has failed to allege with any degree of

11   particularity the overt acts which defendants engaged to support his claims.  Id.  Plaintiff is

12   advised that there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link

13   or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423

14   U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588

15   F.2d 740, 743 (9th Cir. 1978).  In addition, as noted above, the court is unable to hold

16   supervisory personnel liable under § 1983 for the actions of their employees.  Although plaintiff

17   has listed numerous defendants in the "Personal Involvement" section of his amended complaint,

18   plaintiff has not linked any of them to specific facts or actions that demonstrate violations of

19   plaintiff's constitutional rights.  Accordingly, the court is unable to conclude that plaintiff states a

20   cognizable claim against any of the named defendants as articulated in this section.

21             In a section titled "Statement of Claim," plaintiff alleges deliberate indifference to

22   his safety and deliberate indifference to his serious medical needs in violation of his Eighth

23   Amendment rights.  Plaintiff next alleges defendants have violated his free exercise rights under

24   the Religious Land Use and Incarcerated Persons Act (RLUIPA).  Plaintiff maintains that he has

25   been practicing a religion since approximately 1998 and is unwilling to allow barbers to remove

26   his body hair.  As a result, plaintiff alleges that defendants have scrutinized and isolated him for

1   noncompliance with the grooming standards.  Plaintiff also alleges defendants have retaliated

2   against him because he sought redress for violations of his First Amendment rights.  Finally,

3   plaintiff alleges defendants are liable for state tort violations, including gross negligence, malice,

4   oppression, wanton infliction of emotional distress, and pain and suffering.

5           As in his original complaint, plaintiff alleges Correction Officers W. Walker and

6   M. Paris "stockpiled" disciplinary reports on plaintiff's failure to comply with grooming

7   standards.  As a result, plaintiff's custody level went up from Level III to Level IV, and

8   defendants transferred him from CSP-Solano to High Desert State Prison (HDSP).

9           Plaintiff alleges defendants have repeatedly denied him access to showers, the day

10  room or yard, and religious services at HDSP.  Plaintiff also alleges he has utilized the

11  administrative appeal system and as a result, a "vast array of C.D.C.R. officers at H.D.S.P." have

12  harassed him and threatened him with physical harm.  (Compl. at 22).  More specifically,

13  plaintiff alleges defendants have threatened to transfer him and his cellmate to the more violent

14  "C" or "D" yards.

15          On August 31, 2004, plaintiff alleges that defendants ordered him to pack up and

16  informed him that he was a special add-on for transfer to the 180 design D yard.  Plaintiff

17  protested that his life would be in danger, but Officer Crane told him that he had no choice.  On

18  July 19, 2005, Officer Smith moved plaintiff and his cellmate to the lower D yard.  Plaintiff told

19  Officer Smith that they would not be safe and would be brutally beaten or stabbed.  Plaintiff

20  requested to speak with Sergeant Smith and Sergeant Wolcot but they proved unhelpful.  Plaintiff

21  also requested to speak with the Captain, but defendants denied his request.

22          On August 9, 2005, plaintiff alleges that he and his cellmate were brutally beaten

23  within hours of each other.  Plaintiff also alleges that medical staff did not properly treat his

24  broken nose, possible cracked cheek bone, and blurred vision – problems that plaintiff alleges

25  resulted from the incident on the yard.  Plaintiff maintains that medical staff refused to take

26  /////

1  x-rays and told him that he would be fine.  Plaintiff also maintains that he was scheduled to see a

2  doctor for a follow-up visit, but the follow-up visit never took place.

3          Plaintiff alleges that defendants returned plaintiff and his cellmate to the less

4  violent B yard, but defendants continued to harass and threaten plaintiff with further harm.

5  Plaintiff also alleges that defendants continued to deny him access to religious services and

6  maintains that he has filed numerous grievances in an effort to advise and notify supervisor staff.

7          On or around September 2, 2005, Officer Calven transferred plaintiff to the lower

8  C yard.  Upon arrival, plaintiff spoke with Sergeant J. Kelly, who transferred plaintiff back to B

9  yard.  Plaintiff filed another grievance, and Investigative Officer Domowdon told him that "you

10  were put in check and now you were sent to 'c' yard to put in work."  (Compl. at 25).

11  Domowdon also warned plaintiff that filing a grievance would result in another transfer back to

12  C yard.  Plaintiff alleges he filed another grievance to determine why defendants classified him

13  with a "C" status and why he was not receiving his out of cell time.

14          At an administrative segregation hearing (classification), defendants Captain

15  Wright, M. McDonald, M. Norguard, T. Perez, and Ph. D. Riddle questioned plaintiff about why

16  he was not stabbed on the yard.  Defendants also informed plaintiff that they were planning to

17  send him to the more violent C yard again for not meeting grooming standards.  Plaintiff filed a

18  grievance about this threat on September 5, 2005 and requested officials process the appeal

19  confidentially.

20          Plaintiff maintains that defendants employ the threat of transfer and actual transfer

21  to more dangerous yards as a form of intimidation and retaliation against prisoners who use the

22  appeal system.  Plaintiff concludes that defendants' actions have violated his constitutional rights

23  and seeks redress from the court.

24          In a section titled "Relief", plaintiff asks the court for injunctive relief to prevent

25  defendants' ongoing intimidation.  In addition, plaintiff asks the court to order the U.S. Attorney

26  to investigate all of the complained violations of the California Department of Corrections and

1   Rehabilitation's agents and prosecute any and all criminal actions.  Plaintiff seeks compensatory

2   damages in the amount of $10 million dollars jointly and severally from each defendant and one

3   million dollars individually from each defendant.  In addition, plaintiff seeks declaratory relief

4   and any other relief the court deems proper or necessary.

5            The allegations in plaintiff's amended complaint continue to be so vague and

6   conclusory that the court is unable to determine whether the current action is frivolous or fails to

7   state a claim for relief.  The amended complaint does not contain a short and plain statement as

8   required by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy,

9   a complaint must give fair notice to the defendants and must allege facts that support the

10  elements of the claim plainly and succinctly.  Jones v. Community Redev. Agency, 733 F.2d 646,

11  649 (9th Cir. 1984).  Because plaintiff has failed to comply with the requirements of Fed. R. Civ.

12  P. 8(a)(2), the amended complaint must be dismissed.  In the interests of justice, the court will

13  grant plaintiff leave to file a second amended complaint.

14            If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate

15  how the conditions complained of resulted in a deprivation of plaintiff's federal constitutional or

16  statutory rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The second amended

17  complaint must allege in specific terms how each named defendant was involved in the

18  deprivation of plaintiff's rights.  Broad statements about defendants' authority or oversight are

19  not enough.  Similarly, broad statements about constitutional violations are not sufficient.

20  Cognizable claims must link constitutional violations together with specific defendants and

21  specific conduct.

22            For example, plaintiff alleges defendants have engaged in deliberate indifference

23  to his safety in violation of his Eighth Amendment rights.  The Supreme Court has held that a

24  prison official violates the Eighth Amendment "only if he knows that inmates face a substantial

25  /////

26  /////

1   risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[1]

2   Farmer v. Brennan, 511 U.S. 825, 847 (1994).  Under this standard, a prison official must have a

3   "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or

4   safety.  Id. at 834.  In his amended complaint, plaintiff alleges that he and his cellmate advised

5   Correctional Officer Smith that they could not go to the lower 'D' yard because they would not

6   be safe.  However, to state a cognizable Eighth Amendment claim for failure to protect, plaintiff

7   must allege specific facts that help demonstrate Smith knew of and disregarded the substantial

8   risk of serious harm that would result if he sent plaintiff to D yard.  Plaintiff does not need to

9   demonstrate that Smith knew plaintiff would have received a beating if transferred to the D yard;

10  plaintiff need only allege facts demonstrating that Smith knew that there was a substantial risk of

11  serious harm to plaintiff if Smith transferred him.

12          Plaintiff has also alleged that defendants have engaged in deliberate indifference

13  to his serious medical needs in violation of the Eighth Amendment.  To establish a claim for

14  inadequate medical care, the Supreme Court has required that the plaintiff demonstrate that the

15  medical treatment rose to the level of "deliberate indifference to serious medical needs."  Estelle

16  v. Gamble, 429 U.S. 97, 106 (1976).  In applying this standard, the Ninth Circuit has held that

17  before it can be said that a prisoner's civil rights have been abridged, "the indifference to his

18  medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice'

19  will not support this cause of action."  Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir.

20

21      [1] It has been held that a prison official violates the Eighth Amendment when two criteria
are met.  First, a plaintiff's alleged deprivation must be sufficiently serious from an objective
22  standpoint.  Put another way, a prison official's act or omission must result in the denial of "the
minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994)
23  (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, a prison official must have a
state of mind of "deliberate indifference" to a prisoner's health and safety.  Id. at 834.  In the
24  prison context, "only unnecessary and wanton infliction of pain implicates the Eighth
Amendment.  Id. (citing Wilson v. Seiter, 501 U.S. 294 (1991)).  Thus, a court can hold a prison
25  official liable only if "the official knows of and disregards an excessive risk to inmate health or
safety; the official must both be aware of facts from which the inference could be drawn that a
26  substantial risk of serious harm exists, and he must also draw the inference.  Id. at 837.

1   1980), citing <u>Estelle</u>, 429 U.S. at 105-06.  Plaintiff includes a series of detailed allegations about

2   inadequate medical care after the August 9, 2005 beating in the yard.  However, to state a

3   cognizable Eighth Amendment claim for inadequate medical care, plaintiff must also specify

4   which defendants were indifferent to his needs.  Plaintiff only refers to "medical staff" in his

5   complaint.  Plaintiff must link his legal claim together specific defendants and specific conduct.

6            Plaintiff also alleges defendants have violated the Religious Land Use and

7   Incarcerated Persons Act (RLUIPA).  Under RLUIPA, the government is prohibited from

8   imposing "a substantial burden on the religious exercise of a person residing in or confined to an

9   institution . . . even if the burden results from a rule of general applicability."  42 U.S.C. §

10  2000cc-1(a).  The plaintiff bears the initial burden of demonstrating that an institution's actions

11  have placed a substantial burden on the plaintiff's free exercise of religion.  Plaintiff alleges in

12  several places in the amended complaint that defendants have denied him access to religious

13  services and threatened him for not complying with the grooming standards.  However, to state a

14  cognizable claim under RLUIPA, plaintiff must also specify which defendants denied him access

15  to religious services and in what way.  Plaintiff only refers to "C.D.C.R. officers" in his

16  complaint.  Similar to above, plaintiff must link his RLUIPA claim together specific defendants

17  and specific conduct.

18           Finally, plaintiff alleges that defendants have retaliated against him for filing

19  grievances through the prison appeal system.  To establish a First Amendment claim for

20  retaliation in the prison context the plaintiff's claim must meet five criteria.  The claim must

21  include: (1) an assertion that a prison official or state actor took some adverse action against an

22  plaintiff (2) because of (3) plaintiff's protected conduct, and that such action (4) chilled the

23  plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance

24  a legitimate correctional goal.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2004).  Plaintiff

25  alleges that defendants threatened to send him to more dangerous yards and actually transferred

26  him to more dangerous yards for filing grievances related to plaintiff's free exercise of religion.

1  Plaintiff also alleges that "this is being used as a systematic intimidation by C.D.C.R. to achieve

2  their end as retaliation." (Compl. at 23).  However, to state a cognizable retaliation claim,

3  plaintiff must also specify which defendants have engaged in retaliation and for what reasons.

4  Again, as explained above, plaintiff must connect his retaliation claim to particular defendants

5  and particular conduct.

6          Plaintiff is reminded that the court cannot refer to prior pleadings in order to make

7  his second amended complaint complete.  Local Rule 15-220 requires that an amended complaint

8  be complete in itself without reference to any prior pleading.  This is because, as a general rule,

9  an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57

10  (9th Cir. 1967).  Once plaintiff files a second amended complaint, the prior pleading no longer

11  serves any function in the case.  Therefore, in a second amended complaint, as in an original

12  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

13          Accordingly, IT IS HEREBY ORDERED that:

14          1.  Plaintiff's March 1, 2007 amended complaint is dismissed; and

15          2.  Plaintiff is granted thirty days from the date of service of this order to file a

16  second amended complaint that complies with the requirements of the Civil Rights Act, the

17  Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint

18  must bear the docket number assigned to this case and must be labeled "Second Amended

19  Complaint"; failure to file a second amended complaint in accordance with this order will result

20  in a recommendation that this action be dismissed without prejudice.

21  DATED: March 21, 2007.

22

23  _____
   DALE A. DROZD
24  UNITED STATES MAGISTRATE JUDGE

25  DAD:9
   nels1289.14am
26

12